IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| RONALD T. CLARK, )  )  Plaintiff, )  )  vs. )  )  MICHAEL J. ASTRUE,[1] )  Commissioner of Social Security,)  )  Defendant. ) | No. 07-2054-BV |

---

**REPORT AND RECOMMENDATION**

---

Plaintiff, Ronald Clark ("Clark"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying his claims under the Social Security Act ("the Act") for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 *et seq.* and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* On appeal, Clark argues that the administrative law judge ("ALJ") failed to apply proper legal standards in making his determination. The appeal was referred to the United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, it is recommended that the case be remanded to the ALJ to determine whether the nonexertional limitations that the ALJ found

---

[1] Michael Astrue replaced Jo Anne Barnhart as Commissioner of Social Security. Astrue is automatically substituted as a party pursuant to FED. R. CIV. P. 25(d)(1).

are severe enough to prevent Clark from performing unskilled light work and fully explain what relevant jobs Clark can perform.

PROPOSED FINDINGS OF FACT

A.   Procedural History

On November 26, 2003, Clark applied for SSI, and on December 10, 2003, he filed for disability insurance benefits. (R. at 13.) Clark alleges that his disability commenced on August 20, 2001, when he became unable to work because of heart conditions and depression. (R. at 15-16, 27.) Clark's claim was denied initially and again upon reconsideration. (R. at 13.) Clark requested a hearing, and on September 9, 2005, ALJ Sheldon Zisook issued a decision fully favorable to Clark. (R. at 23-30.) Because, however, he originally found that Clark's disability began in 2004, ALJ Zisook moved sua sponte to order a hearing, which he held on May 17, 2006. (R. at 504.)

On June 12, 2006, the ALJ issued a partially favorable decision. (R. at 13-20.) The ALJ denied Clark's request for disability payments because Clark was not disabled under the Act at any time through December 31, 2002, the date last insured. (R. at 13, 18-19). The ALJ further found that Clark became disabled on September 27, 2004, the date his age category changed, through direct application of Medical-Vocational Rule 202.06. (R. at 19.) Clark appealed the ALJ's decision to the Social Security Appeals Council ("Appeals Council"), and on November 24, 2006, the Appeals Council denied Clark's request for review of the ALJ's decision.

(R. at 2-7.) Accordingly, the ALJ's decision became the Commissioner's final decision. On January 24, 2007, Clark filed the present lawsuit in this court, seeking judicial review of the ALJ's June 12, 2006 decision.

B.  Testimony at the May 17, 2006 Hearing

Clark was born on September 27, 1949, and was 56 years old at the time of the hearing. (R. at 63, 505.) He has the equivalent of a high school degree, having completed his GED in approximately 1972. (R. at 73, 505-06.)

Clark last worked as a full-time painter in 2001 before his heart bypass surgery forced him to quit working. (R. at 505-06.) He initially testified that he had been unable to work full-time since 1997, but he later stated he had done some work as a painter during the period of 1999 through 2001 both on and off the books. (R. at 505-06.) Clark's former work as a painter consisted of mostly residential inside and outside painting. (R. at 506.)

During the May 17, 2006 hearing, Clark alleged that he was exposed to some unknown chemical while in combat in Vietnam that caused pulmonary problems. (R. at 506.) He stated that these pulmonary problems began to develop in 1992. (R. at 508.) Clark told the ALJ that his pulmonary problems had forced him to cut his smoking down to only a few cigarettes per day as of about 2004. (R. at 508.) Clark testified that while painting in 2001, he suffered a heart attack and had to undergo open heart bypass surgery. (R. at 508-09.) He complained that he was forced to quit working after the surgery because he suffered from severe pain in

3

his sternum when he lifted, pushed, or pulled anything, and he suffered from shortness of breath. (R. at 509-10.) Clark also told the ALJ that he had back surgery earlier in his life, and he had developed a vocal cord problem in 2003. (R. at 507, 509.)

Clark testified that he has suffered from psychological problems since his service in the Vietnam War. (R. at 507.) He stated that his brother's death in 2002 sent him into such a deep depression that he could not get out of bed. (R. at 507, 510.) He told the ALJ that he experienced more severe depression and nightmares after his brother's death. (R. at 510.) He denied ever being diagnosed with post-traumatic stress disorder, but he indicated that he had been taking medication, such as Celexa and Zoloft, for the psychological problems since his surgery in 2001. (R. at 507, 510.)

As to his daily activities, Clark testified that he sculpts clay and does minor repairs around the house. (R. at 511.) He is unable to walk long distances because he often gets short of breath walking from room to room. (R. at 512.) Clark testified that he takes eight or nine different medications for depression, pulmonary problems, his heart, and his cholesterol. (R. at 512.) He also stated that he does not like to get out into public and does not visit relatives. (R. at 512.) Clark told the ALJ that he has disliked being in public since 2002. (R. at 512.)

Clark's wife of 36 years, Marie, also testified at the May 17, 2006 hearing. (R. at 513.) She stated that after Clark returned

from Vietnam he would not talk to her about anything. (R. at 513-14.) She told the ALJ that Clark broke down after the heart attack and began his depression medication after meeting with a psychiatrist. (R. at 514.) Marie testified that despite the medication, Clark's depression continued to get worse, especially after his brother's death in 2002. (R. at 514.) She also stated that his nightmares had continued to worsen after the heart attack and his brother's death. (R. at 515.)

Marie testified that Clark had been unable to perform any work as a painter after the heart attack because he could not pick up the ladders or paint buckets. (R. at 515.) She also mentioned that Clark had a busted eardrum from running over a landmine, shrapnel in one of his arms, and cataracts. (R. at 516.) Marie stated that Clark is unable to work and his condition continues to worsen. (R. at 517.)

As to Clark's daily activities, Marie testified that Clark will help out with little things around the house, sculpt with clay, and cook a little bit. (R. at 517.) She stated that he will drive a little, but he will not go to church, shopping, or a movie because he does not like to be around crowds of people. (R. at 517.) She told the ALJ that his friends had moved away and all they do is sit in the house together. (R. at 517-18.)

C. <u>Medical History</u>

Clark suffers from severe impairments of chronic obstructive pulmonary disease, coronary artery disease post bypass surgery,

idiopathic true left vocal cord paralysis, depressive disorder, environmental limitations, and nonexertional communicative limitations. (R. at 15-16.) Since his alleged onset date, Clark has been treated by doctors at the Veterans Administration Medical Center ("VAMC"). On August 20, 2001, Clark underwent bypass graft surgery. (R. at 142.) After the surgery, Clark complained of tenderness in his chest and sternum and requested medication for the pain. (R. at 160, 167.) Clark reported experiencing hoarseness on May 5, 2003, and continued to experience problems with it for several months. (R. at 191, 431, 428.) After multiple examinations and tests, it was determined that Clark had left vocal cord paralysis. (R. at 349-50.) He also reported having some dyspnea and slight dizziness while climbing ladders on August 7, 2003. (R. at 189.) Clark has also had surgical procedures for lower back disc removal, cataracts, and hernia repair. (R. at 218.)

Clark's medical records show that he has complained of and been followed for depression by doctors at the VAMC since his bypass surgery in 2001. A mental status exam revealed a GAF of 45. (R. at 16, 341). A GAF of 45 is illustrative of serious impairment in social, occupational or school functioning. (R. at 16.) Clark was diagnosed with depression NOS. (R. at 16, 341.) On December 18, 2001, and January 2, 2002, Clark missed appointments with psychologists to evaluate the extent of his depression. (R. at 450-51.) He was eventually prescribed Celexa to help cope with his

depression. (R. at 434.) The records show that Clark stated that the Celexa was not working and he remained depressed, but he had no intentions to try and take his own life. (R. at 334, 340-41.) The records lack any documentation of Clark visiting medical personnel since July of 2004.

On February 10, 2004, Dr. Thomas Pettigrew, Ed. D., a Disability Determination Services ("DDS") consulting psychiatrist, conducted a psychological evaluation of Clark. (R. at 290–95.) Clark told Dr. Pettigrew that he continued to do some small jobs painting, but otherwise did not work. (R. at 291, 294.) Clark also reported that he had lung disease, lived with his nephew, did not use alcohol, and smoked marijuana "a couple or three times a month." (R. at 291-92.) Dr. Pettigrew determined that there were no signs that Clark was intellectually inadequate and that he possessed adequate verbal and communication skills. (R. at 293-94.) He determined that Clark was not likely dependent upon alcohol or Cannabis. (R. at 294.) Dr. Pettigrew also concluded that Clark exhibited no signs of impaired attention, concentration, or memory. (R. at 294.) Dr. Pettigrew did not perform any psychological testing.

On March 18, 2004, a Disability Determination Services ("DDS") medical consultant completed a Psychiatric Review Technique Form on Clark. (R. at 317.)[2] In this form the DDS consultant indicated

---

[2] The consultant's signature and handwritten notes are illegible.

that Clark's impairments were not severe. (R. at 317.) The physician also marked that Clark had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (R. at 327.)

D. <u>Physical Residual Functional Capacity ("RFC") Assessment</u>

On March 2, 2004, Dr. Juliao, a DDS medical consultant, conducted a Physical RFC assessment on Clark. The assessment indicated that Clark could occasionally lift twenty pounds and frequently lift ten pounds. (R. at 310.) It further listed Clark as being able to stand, walk, and/or sit for a total of about six hours in an eight hour workday. (R. at 310.) It also noted that Clark had postural restraints which only allowed him to only occasionally climb ladders, ropes, and scaffolds and frequently balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. (R. at 311.) Dr. Juliao also indicated that Clark had communicative limitations in his ability to speak and environmental limitations requiring him to avoid concentrated exposure to extreme cold, extreme heat, and hazards such as machinery or heights. (R. at 313.) He also noted that Clark should avoid even moderate exposure to fumes, odors, dusts, gases, or poor ventilation. (R. at 313.) The RFC assessment indicated that there was not a statement from a treating or examining source on file regarding Clark's physical capacities. (R. at 315.)

E. <u>The ALJ's Decision</u>

Considering the record and Clark's testimony and using the five-step disability analysis, the ALJ concluded that Clark was not disabled under sections 216(i) and 223(d) of the Act through December 31, 2002, the date last insured. (R. at 19.) The ALJ further concluded that, for purposes of receiving SSI, Clark was disabled under section 1614(a)(3)(A) of the Act beginning on September 27, 2004. (R. at 19.) The ALJ found that Clark did not have the RFC to perform his previous work as a painter. (R. at 18.) Because the ALJ determined that Clark did not became disabled until September 27, 2004, and this date was after the date he was last insured, the ALJ held that Clark was only entitled to receive SSI, as authorized by the Social Security Administration, and not disability insurance benefits. (R. at 19-20.)

At the first step of the disability analysis, the ALJ found that Clark had "not engaged in substantial gainful activity at any time relevant to this decision." (R. at 15.) Second, the ALJ concluded that Clark suffered from severe impairments of chronic obstructive pulmonary disease, coronary artery disease status post bypass surgery, idiopathic true left vocal cord paralysis, and depressive disorder. (R. at 15.) At the third step, however, the ALJ concluded that Clark did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 16.)

Accordingly, at the fourth step, the ALJ had to determine

whether Clark retained the RFC to perform his past relevant work. (R. at 16-18.) The ALJ found that Clark retained the RFC to lift twenty pounds occasionally, to lift ten pounds frequently, and to stand, walk, or sit for six hours in an eight-hour workday. (R. at 16.) The ALJ also found, however, that Clark had environmental limitations that precluded moderate exposure to environmental irritants and concentrated exposure to extreme temperatures. (R. at 16.) In addition, the ALJ concluded that Clark had nonexertional communicative limitations that precluded him from frequently speaking and nonexertional mental limitations that restricted him to occasional interaction with the general public. (R. at 16.) The ALJ noted that Clark's past relevant work as a painter required "sustained skilled work activity at the medium exertional level." (R. at 18.) The ALJ further noted that Clark's RFC restricted him to light exertional activity, and, as a result, the ALJ determined that Clark was unable to perform any past relevant work. (R. at 18.)

In the fifth and final step, the ALJ considered Clark's age, education, work experience, and RFC to determine whether or not he could perform other work which existed in significant numbers in the national economy. (R. at 18-19.) The ALJ noted that on September 27, 2004, Clark's age category changed from "approaching advanced age" to "advanced age." (R. at 18.) Because the Medical-Vocational Guidelines, available at 20 C.F.R. pt. 404, subpt. P, app. 2 (commonly referred to as "the Grid"), would have directed a finding

of not disabled when Clark was "approaching advanced age" and Clark's non-exertional limitations had "little or no effect on the occupational base of unskilled light jobs," the ALJ held that Clark was not disabled at any time while he was insured under the Act. (R. at 18-19.) The ALJ then directly applied the Grid and determined that Clark became disabled on September 27, 2004, when he became fifty-five years old, thus reaching "advanced age," and there were no longer a significant number of jobs in the national economy that he could perform. (R. at 18-19.) In summary, the ALJ concluded that Clark was not disabled at any time through December 31, 2002, the date Clark was last insured under the Act; became disabled on September 27, 2004; and remained disabled through the date of the ALJ's decision. (R. at 19.)

In reaching his decision, the ALJ was generally persuaded by the RFC assessment and report of the non-treating physician, Dr. Juliao. (R. at 17.) He gave weight to Dr. Juliao's assessment that Clark could sustain work activity at a light exertional level with nonexertional communicative and environmental limitations. (R. at 17.) He did not give credence, however, to Dr. Juliao's assessment that Clark suffered nonexertional postural limitations caused by alleged blackout spells. (R. at 17.) The ALJ noted that there was "insufficient documentation in the record [to support] a finding that [Clark] had a medically determinable impairment that . . . resulted in blackouts." (R. at 17.) He also noted that the absence of additional limitations was supported by the "lack of medical

treatment since July 8, 2004." (R. at 17.) The ALJ found that Clark's depressive disorder only resulted in mild restriction of his daily activities, and he attributed any further limitations to Clark's physical condition. (R. at 17-18.) In finding that Clark only had moderate difficulty maintaining social functioning, the ALJ was persuaded by Clark's ability to interact with medical personnel, do some painting work, and do some shopping. (R. at 18.) The ALJ noted that Clark's ability to maintain attention and concentration, as reported by Dr. Pettigrew, did not justify finding more than moderate limitations in interacting with the general public. (R. at 18.) The ALJ found that Clark's statements regarding the intensity, duration, and limiting effects of his symptoms were not fully credible. (R. at 17.) In not finding Clark fully credible, the ALJ noted the inconsistency between Clark's testimony at the hearing that he had not worked as a painter since his bypass surgery and the admission to Dr. Pettigrew that he still did small painting jobs. (R. at 17.) He also found that the lack of medical treatment since July of 2004 detracted from Clark's credibility. (R. at 17.)

PROPOSED CONCLUSIONS OF LAW

In order for a claimant to receive disability benefits, he must demonstrate that he is disabled and that he became disabled prior to the date on which he was last insured. 53 U.S.C. § 423(a); *see Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Clark must, therefore, prove that he became disabled prior to December 31, 2002,

the date which the ALJ found that Clark was last insured. (R. at 15.) Disability is determined by a five-step sequential analysis set forth in the Social Security Regulations. 20 C.F.R. § 416.920. First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. *Id.* § 416.920(a)(4)(i), (b). Second, a finding must be made that the claimant suffers from severe impairment. *Id.* § 416.920(a)(4)(ii). Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations in Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. *Id.* § 416.920(d). If the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the residual functional capacity to return to any past relevant work. *Id.* § 416.920(a)(4)(iv), (e). If the ALJ finds the claimant unable to perform past relevant work, then, at the fifth step, the ALJ must discuss whether the claimant can perform other work which exists in significant numbers in the national economy. *Id.* §§ 416.920(a)(4)(v), (g)(1), 416.960(c)(1)-(2). At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant is capable of doing other work. *Adkins v. Comm'n of Soc. Sec.*, 2007 WL 3037281, at *3 (6th Cir. 2007).

On appeal, Clark specifically argues the following: (1) the

ALJ's determination that Clark did not suffer nonexertional postural limitations resulting from blackout spells was in error and (2) the ALJ erred by failing to consider Clark's nonexertional limitations when he used the Medical-Vocational Guidelines directly to determine that Clark did not qualify for disability benefits.

A.  Standard of Review

Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision, and whether the Commissioner used the proper legal criteria in making the decision. 42 U.S.C. § 405(g); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record taken as a whole and "must take into account whatever in the record fairly detracts from its weight." *Abbott*, 905 F.2d at 923 (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of Health & Human Servs.*, 893

F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

B. <u>Nonexertional Postural Limitation</u>

Clark contends that the ALJ erred by partially accepting Dr. Juliao's findings. (Pl.'s Br. 7-8.) Specifically, he argues that it is incongruent to generally accept Dr. Juliao's opinions but to reject the doctor's finding that Clark's blackout spells caused nonexertional postural limitations. (Pl.'s Br. 7-8.)

In general, an ALJ will consider medical opinions in each case in conjunction with the remainder of the relevant information that they receive. 20 C.F.R. § 404.1527(b). An ALJ will typically give an opinion greater weight when a medical source presents relevant evidence to support that particular opinion. *Id.* § 404.1527(d)(3). The lack of "detailed, clinical, diagnostic evidence" can render a physician's opinion less creditworthy. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). When a nonexamining source's opinion is not supported by evidence in the case record, an ALJ is free to adjust the weight given to that opinion accordingly. *See* 20 C.F.R. § 404.1527(f)(2)(ii).

In the present case, the ALJ generally gave credence to non-treating physician Dr. Juliao's medical opinions, finding that they were "consistent with the longitudinal record in all respects." (R. at 17.) He did not, however, accord any weight to Dr. Juliao's

15

determination that Clark suffered alleged blackout spells that caused nonexertional postural limitations. (R. at 17.) The ALJ must consider the medical opinions in light of the supporting evidence and a physician's explanations. The ALJ explained that he found "insufficient documentation in the record supporting a finding that the [claimant] had a medically determinable impairment that persisted for 12 consecutive months and resulted in blackouts." (R. at 17.) Because the ALJ discounted Dr. Juliao's opinion regarding the blackouts by finding that the assertion lacked support in the record as a whole, the ALJ properly balanced Dr. Juliao's medical opinion with the remainder of the relevant evidence. There is nothing improper with the ALJ believing Dr. Juliao's assertions that are supported by facts in the record while disbelieving a statement that is not supported by the record. Although the ALJ's decision may be proper, there must, nevertheless, be substantial evidence to support his decision that Clark did not suffer blackout spells that caused nonexertional postural limitations. The ALJ was dissuaded from believing that Clark had these additional limitations because there was a complete lack of evidence that Clark had sought any medical treatment since July 8, 2004. Furthermore, the ALJ concluded that there was insufficient documentation to support a finding that Clark suffered from blackouts. Clark did not point to any medical records that indicated he suffered from or sought treatment for blackouts, nor has the court found any. Accordingly, the ALJ's decision to reject Dr. Juliao's finding that Clark had

blackout spells that caused nonexertional postural limitations is supported by substantial evidence in the record.

C. <u>Medical-Vocational Guidelines</u>

Clark argues that the ALJ erred by utilizing the Medical-Vocational Guidelines ("the Grid")to direct a decision when he suffered from nonexertional limitations rather than using a vocational expert when determining that Clark was not disabled prior to the date he was last insured. (Pl.'s Br. 2.) Nonexertional limitations are those non-strength impairments, such as pain, depression, anxiety or difficultly in maintaining attention or concentration, that affect a claimant's ability to perform the job. 20 C.F.R. § 404.1569a(c). Generally, when an ALJ finds that a claimant suffers from nonexertional limitations, it precludes direct application of the Grid. *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 771-772 (6th Cir. 1987). In order to preclude application of the Grid, the nonexertional limitations must be severe enough to prevent a claimant from performing the full range of work at a designated level of RFC capacity. *See Cole*, 820 F.2d at 772. The burden of proof is on the government to show that the nonexertional limitations do not prevent the claimant from performing any other relevant jobs which exist in the U.S. economy. *Adkins v. Comm'r of Soc. Sec.*, No. 07-5132, 2007 WL 3037281, at *5 (6th Cir. 2007). When any impairments that an ALJ finds are based, even in part, on a nonexertional limitation, "the government's burden is to connect the dots between the claimant's actual capacity

and an actual job in the U.S. economy." *Id*. "This requires a finding of capacity to work which is expressed, not in terms of a vague catch-all phrase such as "light" work, but in terms of specific types of jobs." *Hephner v. Mathews*, 574 F.2d 359, 362-63 (6th Cir. 1978). When a claimant suffers from nonexertional limitations, the ALJ must rely on a vocational expert or similar evidence rather than the Medical-Vocational Guidelines. *Adkins*, 2007 WL 3037281, at *3.

The ALJ specifically found that Clark suffered from both exertional and nonexertional limitations. Clark's nonexertional limitations consisted of environmental, co, and mental limitations. In addition, the ALJ noted that Clark's moderate dificculty in social functioning, restricted him to occasional interaction with the public. The ALJ, however, did not find Clark's testimony credible regarding the intensity, duration, and limiting effects. (R. at 17.) The ALJ noted that Clark's severe depressive disorder resulted in mild restrictions. (R. at 17.) In addition, he found that Clark had "difficulty maintaining social functioning." The ALJ, however, did not articulate whether Clark's nonexertional limitations significantly limited the range of work permitted by his exertional limitations with reference to specific jobs. (R. at 18.) Rather, the ALJ simply concluded in general, without reference to any vocational or other evidence, that Clark's "additional limitations had little or no effect on the occupational base of unskilled light jobs." (R. at 19.) Because the ALJ did not properly

18

evaluate the effect of Clark's nonexertional limitations on the type of work available to him, the government did not meet its burden of proof to show that sufficient jobs exist that Clark is capable of performing. Therefore, this case must be remanded.

On remand, the ALJ must specifically determine whether Clark's nonexertional limitations are severe enough to prevent him from performing the full range of unskilled light work. Evaluating the effect of nonexertional impairments on a claimant's ability to do light work will require the assistance of a vocational specialist. *See* Titles II and IVI: Capability to Do Other Work-- The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, S.S.R. 83-14, at *4-5 (1982).

## CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's decision be reversed, and this case be remanded for the ALJ to fully consider whether Clark's nonexertional limitations are severe enough to prevent him from performing the full range of unskilled light work. In doing so, the ALJ should specifically consider, using vocational or similar evidence, whether Clark's individual nonexertional limitations prevent him from performing unskilled light work.

RESPECTFULLY SUBMITTED this 12th day of February, 2008.

s/ Diane K. Vescovo<br>
DIANE K. VESCOVO<br>
UNITED STATES MAGISTRATE JUDGE